

# Empire Justice Center
Making the law work for all New Yorkers

Albany ◆ Rochester ◆ Westchester ◆ Long Island

Writer's Direct Dial Telephone Number: (585) 295-5811
pdellinger@empirejustice.org

June 20, 2018

Hon. Frank P. Geraci, Jr.
United States District Judge
United States Courthouse
100 State Street
Rochester, New York 14614

Re: Holley v. Millhouse Family Restaurant, Inc. et al., Case No. 17- cv- 6194 (FPG)(MWP) (W.D.N.Y.)

Dear Chief Judge Geraci:

I represent the plaintiff in this matter, and I am writing to you on behalf of myself and defendants' counsel, Jeffery Calabrese. The parties have recently reached an amicable settlement of plaintiff's claims against defendants, which include overtime claims, brought under the Fair Labor Standards Act (FLSA), 29 U.S.C.; §201, et seq. Pursuant to Cheeks v Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S.Ct. 824 (2016), voluntary FLSA settlements must now be approved by the district court, and I have attached a copy of the proposed FLSA settlement agreement to this letter.

To effect this settlement, I respectfully request the court review this proposed agreement, and if acceptable, issue an order approving the settlement agreement. Once the agreement has been approved by the court and signed by the parties, we will submit a signed copy to the court along with an accompanying Stipulation and proposed Order of Dismissal pursuant to Rule 41 (a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

The plaintiff, Tavare Holley, alleged in the complaint that he worked for defendants as a dishwasher in their restaurant. He disputed the accuracy of defendants' timekeeping records and claimed he was owed federal overtime wages for his work under the Fair Labor Standards Act, 29 U.S.C. §207. Mr. Holley claims that after he complained about the amount of his wages, he was terminated by defendants. Mr. Holley brought this action to recover his unpaid overtime wages and liquidated damages for violations of the FLSA, 29 U.S.C. §§ 201, et seq., as well as for alleged violations of the New York State Labor Law, N.Y. Labor Law §§ 190, et seq., and N.Y. Labor Law § 215 ("NYLL"), as well as alleged statutory damages for violations of the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434. Defendants strongly denied all of plaintiff's allegations.

The parties engaged in mediation settlement negotiations in October 2017 before proceeding with discovery, but were unsuccessful at reaching a settlement. In April 2018, as part of a scheduled status conference, Judge Payson assisted the parties in reaching an agreement on a monetary settlement. The parties then engaged in settlement negotiations concerning the terms of settlement, which ultimately resulted in the attached proposed Mutual Settlement and Release Agreement.

Settlement of Plaintiff's FLSA Claims Against Defendants

With respect to plaintiff's FLSA claims, and based on the records available to plaintiff's counsel, we estimated that Plaintiff Tavare Holley is owed a total of $2562.58 in unpaid overtime wages. The parties engaged in arms-length settlement negotiations with the assistance of Judge Payson. The plaintiff is primarily interested in a monetary settlement which would allow him to quickly receive what he believes is the amount of unpaid wages owed to him. The prompt single lump sum payment of wages is far preferable to continued discovery and litigation. From the defendants' perspective, whether plaintiff is entitled to unpaid wages amounting to this sum, or any damages is strongly contested. The costs of continuing to litigate this case were also factors resulting in settlement.

Under the settlement terms, Plaintiff Holley will receive a total $2562.58 in unpaid overtime wages and a separate check totaling $4437.32 constituting damages. The damages payment includes FLSA liquidated damages, totaling $2562.58, and $874.74 in payment for plaintiff's remaining claims brought under state labor law and federal tax law. This settlement permits the plaintiff to receive the total amount of wages owed to him (as calculated by plaintiffs' counsel) as well as 100% liquidated damages for his individual FLSA wage claims. The proposed Settlement Agreement contains narrowly tailored mutual release provisions, and does not contain any confidentiality or waiver provisions, or restrictions on employment, and permits any party to make "any truthful statements related to or concerning the action." See Snead v. Interim Healthcare, 286 F.Supp.3d 546 (W.D.N.Y. 2018).

Attorney's Fees

The Empire Justice Center will receive $4000 in attorney's fees from defendants for the work expended by plaintiff's counsel in the prosecution of plaintiff's FLSA claims, as well as all other claims. We believe this is a reasonable sum for the amount of time spent drafting the complaint; calculating the amount of wages owed by defendants; preparing the documents and memoranda for the mediator; engaging in negotiations and mediation with the mediator and defendants; locating, retaining, and engaging a forensic accountant to assist us in planning and drafting discovery, contesting the accuracy of defendant's time records, and possible testimony at trial; drafting discovery and submitting document requests to defendants ; review of defendants' responses to this discovery, research and follow-up to defendant's objections; our renewed settlement negotiations and meetings with the court; drafting and negotiating the attached Mutual Settlement and Release Agreements; and preparing this motion. The Empire Justice Center represents low income clients without cost. As a result, none of the plaintiff's settlement will be later paid by Mr. Holley to the Empire Justice Center.

I believe this case is an example of a small FLSA settlement where there is no rationale or financial sense "for proceeding with litigation …if the district court rejects the proposed settlement." <u>Cheeks v Freeport Pancake House, Inc.</u>, 796 F3d at 207 citing, <u>Picerni v Bilingual Seit & Preschool Inc.</u>, 925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013). With the assistance of the court, the parties have negotiated an arm's length agreement which will require the defendants to pay the plaintiff the amount of wages owed to him, as well as the total amount of liquidated damages that plaintiff might have recovered if he were entirely successful after discovery and trial.

For these reasons, I respectfully request the court approve the Settlement Agreement in this case. Please contact me should the court desire additional records concerning any aspect of this proposed settlement.

Thank you for your consideration.

Sincerely,

Peter O'Brian Dellinger
Attorney at Law

Enclosures

cc: Jeffery Calabrese, Esq.
(Via Federal Electronic Case Filing System)

# Exhibit A

## MUTUAL SETTLEMENT AND RELEASE AGREEMENT

**THIS AGREEMENT** ("Agreement") is made and entered into this ___ day of June, 2018, by and between **TAVARE HOLLEY** ("Holley"), on the one hand, and **MILLHOUSE FAMILY RESTAURANT, INC.** ("Millhouse"), **CHRIS STATHOPOULOS**, and **CARMELLA STATHOPOULOS**, on the other hand. Holley, Millhouse, Chris Stathopoulos, and Carmella Stathopoulos are each individually referred to herein as a "Party" and collectively as the "Parties."

**WHEREAS**, Millhouse employed Holley in parts of 2015 and 2016; and

**WHEREAS**, Holley commenced an action in the United States District Court for the Western District of New York, captioned as *Tavare Holley v. Millhouse Family Restaurant, Inc., Chris Stathopoulos, in his individual capacity, and Carmella Stathopoulos, in her individual capacity*, Civil Action No: 17-cv-06194 (W.D.N.Y.) ("Action"), alleging, among other things, that Millhouse, and Chris and Carmella Stathopoulos, as Millhouse's owners, officers, or managers, failed to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and terminated Holley's employment when he complained that he was not paid overtime; and

**WHEREAS**, Millhouse, Chris Stathopoulos, and Carmella Stathopoulos deny Holley's allegations that they failed to pay him overtime wages and deny that they terminated Holley's employment; and

**WHEREAS**, without any admission of liability or wrongdoing whatsoever and solely to avoid further litigation expense, the Parties wish to resolve and settle any and all disputes and controversies between them including, but not limited to, all issues relating to the Action and the employment of Holley by Millhouse.

**NOW, THEREFORE**, for good and valuable consideration, the Parties agree as follows:

1. **MONETARY**.

   a. Millhouse shall pay the total sum of Eleven Thousand Dollars ($11,000.00), representing settlement of all of Holley's claims, whether included in the Complaint or otherwise, payable as follows:

   i. A certified check made payable to "Tavare Holley" in the amount of Four Thousand Four Hundred Thirty-Seven Dollars and Thirty-Two Cents ($4,437.32), representing settlement of Holley's claims for compensatory damages, liquidated damages, punitive damages and/or any other alleged damages other than damages for unpaid wages. Millhouse will issue Holley a Form 1099 for this payment.

   ii A certified check made payable to "Tavare Holley" in the amount of Two Thousand One Hundred Ninety-One Dollars and Seventeen Cents

($2,191.17), less applicable deductions and withholdings, representing settlement of Holley's claims for lost/unpaid wages (including overtime payments). Millhouse will report this payment to the IRS on a Form W-2.

        iii.    A return to Holley of Check No. 015519 dated July 18, 2017, now certified in the net amount of Two Hundred Twenty-Two Dollars and Seventy-Seven Cents ($222.77), which is the net payment after applicable deductions and withholdings from a gross payment of Three Hundred Seventy-One Dollars and Fifty-One Cents ($371.51), representing further payment in settlement of Holley's claims for lost/unpaid wages (including overtime payments).

        iv.    A certified check made payable to "Empire Justice Center, as Attorney for Tavare Holley," in the amount of Four Thousand Dollars ($4,000), representing settlement of Holley's claims for attorneys' fees. Millhouse will report this payment to IRS and issue a Form 1099 to Empire Justice Center and Holley for this payment.

    b.    Millhouse makes no representations to Holley or his attorney regarding the taxability or tax implications of this settlement. Holley is solely responsible for any tax consequences associated with this settlement or the amounts paid pursuant to this Agreement. Empire Justice Center, as attorney, is responsible for any tax consequences associated with the payment it receives under this Agreement.

    c.    The Parties agree that the amounts listed are in settlement of the allegations made by Holley against Millhouse, Chris Stathopoulos, and Carmella Stathopoulos. Holley and his attorneys agree that said amounts are inclusive of any and all claims for attorney's fees and costs.

    d.    Holley and Millhouse agree that the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. The Parties agree that any party is allowed to make any truthful statements related to or concerning the Action.

2.    **MUTUAL RELEASES.**

    a.    Holley, for himself and his heirs, executors, successors and assigns, in consideration of the sums and benefits described in Section 1 of this Agreement, and other good and valuable consideration, including the waiver and release described in subsection (b) below, does hereby forever discharge and release Millhouse; Millhouse's agents, officers, shareholders, directors, employees, parents, subsidiaries, members, affiliates, predecessors, successors and assigns; Chris Stathopoulos and his heirs, executors and assigns; and Carmella Stathopoulos and her heirs, executors and assigns (all of the foregoing are collectively referred to as the "Millhouse Released Parties"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bills, bonds, specialties, contracts, covenants, controversies, agreements, promises, variances, trespasses, judgments, damages, executions, claims and demands under common, equitable, federal, state or local law, that he now has, or which any

person or entity may have on his behalf, whether asserted or which may have been asserted, on account of, arising out of, or related to his employment at Millhouse Family Restaurant or the facts which gave rise to the Action, from the date he commenced his employment in 2015 until the date he signs this Agreement, including but not limited to any and all claims for discrimination or retaliation of any kind.

      b.      Millhouse, Chris Stathopoulos, and Carmella Stathopoulos, for themselves and their heirs, executors, successors and assigns, in consideration of the release described in subsection (a), above and other good and valuable consideration, do hereby forever discharge and release Holley, and his heirs, executors, and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bills, bonds, specialties, contracts, covenants, controversies, agreements, promises, variances, trespasses, judgments, damages, executions, claims and demands under common, equitable, federal, state or local law, that they now have, or which any person or entity may have on their behalf, whether asserted or which may have been asserted, on account of, arising out of, or related to Holley's employment at Millhouse Family Restaurant or the facts which gave rise to the Action, from the date he commenced his employment in 2015 until the date they sign this Agreement.

      c.      Nothing in this release shall be construed to constitute a waiver of (i) any claims the Parties may have against each other that arise from acts or omissions that occur after the date that they each sign this Agreement, or (ii) any claims that they cannot waive as a matter of law. In addition, this release does not affect any party's rights as expressly created by this Agreement and does not limit his, her or their ability to enforce this Agreement.

      d.      The parties agree that the releases may be enforced in any court, federal, state or local, and before any administrative agency or body, federal, state or local.

      3.      <u>Attorney Consultation</u>. The attorneys for the parties hereby advise their clients to consult with an attorney of their choosing concerning all of the terms of this Agreement prior to executing this Agreement. By execution of this Agreement, each party represents and warrants that he, she or it has had the opportunity to consult with an attorney of his choosing concerning all of the terms of this Agreement.

      4.      <u>Court Approval of Settlement and Agreement</u>. The Parties expressly acknowledge that because the asserted claims include claims under the FLSA, judicial approval is required to make this Agreement effective. Accordingly, Holley and Millhouse agree to the following procedure to obtain judicial approval:

      a.      Once the terms have been mutually agreed upon, Plaintiff's counsel shall submit this proposed Agreement to the Court as part of a joint motion requesting approval of the Agreement on behalf of the Parties.

   b. If the Court approves this proposed Agreement, Millhouse shall make the payments required by Section 1 of this Agreement within five (5) business days after this Agreement is signed by the Parties by delivering certified checks to Plaintiff's counsel.

   c. Following receipt of the settlement checks and the Agreement signed by the Defendants, all of which shall be held in escrow by Plaintiff's counsel, a signed copy of the Agreement signed by the Plaintiff accompanied by a Stipulation and Proposed Order dismissing the Action with prejudice shall be promptly filed with the Court.

   d. Upon the Court's entry of the Order dismissing the Action with prejudice, Plaintiff's counsel shall release from escrow the settlement checks and the Agreement as signed by Defendants.

  5. The Parties acknowledge and agree that the payment obligations under Section 1 are expressly contingent upon obtaining judicial approval of this settlement as outlined above or, failing that, such other judicial approval made possible by the Court's procedures. If the parties are unable to obtain judicial approval of this settlement and Agreement, the settlement and Agreement are null and void. The parties shall use their best efforts to promptly effect Court approval of this Agreement.

  6. <u>Non-Admission of Liability</u>. Nothing contained in this Agreement, or in any document that may be executed in connection herewith, is intended to be or shall be deemed, construed, or treated in any respect as an admission of any fault, wrongdoing, or liability on the part of the Millhouse Released Parties. In fact, the Millhouse Released Parties deny that they are legally responsible or legally obligated for any claims or that they have engaged in any wrongdoing.

  7. <u>Voluntary Agreement</u>. The parties each represent and warrant that he, she or they have carefully read each and every provision of this Agreement and that they fully understand all of the terms and conditions of this Agreement. Each party represents and warrants that each enters into this Agreement voluntarily, of free will, without any pressure or coercion from any person or entity.

  8. <u>Failure to Enforce</u>. Any failure of the Parties at any time or times to enforce their respective rights under any provision of this Agreement shall not be construed to be a waiver of such provision or the right of a party to enforce such provision.

  9. <u>Original Agreement</u>. This Agreement may be executed in multiple originals, each of which shall be considered as an original instrument, but all of which shall constitute one agreement. A photocopy or facsimile of the original documents will have the same force and effect as the original.

**HOLLEY, MILLHOUSE, CHRIS STATHOPOULOS, AND CARMELLA STATHOPOULOS HEREBY EXPRESSLY WARRANT AND REPRESENTS THAT, BEFORE ENTERING INTO THIS AGREEMENT, THEY EACH HAVE RECEIVED A REASONABLE PERIOD OF TIME WITHIN WHICH TO CONSIDER ALL OF THE**

PROVISIONS CONTAINED IN THIS AGREEMENT, THAT THEY EACH HAVE FULLY READ, INFORMED HIMSELF OR HERSELF OF AND UNDERSTAND ALL THE TERMS, CONTENTS, CONDITIONS, AND EFFECTS OF ALL PROVISIONS OF THIS AGREEMENT, AND THAT THEY EACH CONSIDER ALL SUCH PROVISIONS TO BE SATISFACTORY.

HOLLEY, MILLHOUSE, CHRIS STATHOPOULOS, AND CARMELLA STATHOPOULOS FURTHER EXPRESSLY WARRANT AND REPRESENT THAT NO PROMISE OR REPRESENTATION OF ANY KIND HAS BEEN MADE, EXCEPT THOSE EXPRESSLY STATED IN THIS AGREEMENT.

HOLLEY, MILLHOUSE, CHRIS STATHOPOULOS, AND CARMELLA STATHOPOULOS FURTHER EXPRESSLY WARRANT AND REPRESENT THAT THEY EACH ENTER INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

AGREED TO BY:

DATED:_____               _____
                                    TAVARE HOLLEY



                                    MILLHOUSE FAMILY RESTAURANT, INC.

DATED:_____               By:_____
                                      Name:
                                      Title:


DATED:_____               _____
                                    CHRIS STATHOPOULOS


DATED:_____               _____
                                    CARMELLA STATHOPOULOS


*[acknowledgment page follows]*

5

State of New York)
County of Monroe)      ss.:

    On the _____ day of _____ in the year 2018, before me, the undersigned, personally appeared Tavare Holley, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same.

                                                                          _____
                                                                             Notary Public

State of New York )
County of Monroe)      ss.:

    On the _____ day of _____ in the year 2018, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity as _____ of Millhouse Family Restaurant, Inc. and that by his/her signature on the instrument, Millhouse Family Restaurant, Inc. executed the instrument.

                                                                          _____
                                                                             Notary Public

State of New York)
County of Monroe)      ss.:

    On the _____ day of _____ in the year 201_, before me, the undersigned, personally appeared Chris Stathopoulos, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same.

                                                                          _____
                                                                             Notary Public

State of New York)
County of Monroe)      ss.:

    On the _____ day of _____ in the year 201_, before me, the undersigned, personally appeared Carmella Stathopoulos, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same.

                                                                          _____
                                                                             Notary Public